**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: March 31 2025**

John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 23-30070 |
| | ) | |
| Jason M. Leibold, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 23-03022 |
| | ) | |
| Momma Tried Sports Cards, LLC | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jason M. Leibold, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1

This Adversary Proceeding is before the court on Plaintiff Momma Tried Sports Cards, LLC's ("Plaintiff") Motion for Summary Judgment [Doc. #44], and Defendant-Debtor Jason M. Leibold's ("Defendant-Debtor") Response to Plaintiff's Motion for Summary Judgment [Doc. #49]. In the Complaint, Plaintiff seeks a determination that the debt owed it by Defendant-Debtor is non-dischargeable under 11 U.S.C. §§523(a)(2)(A), (a)(2)(B), and (a)(6). [Doc #1, pp. 7-8].

The Court has jurisdiction over Defendant-Debtor's underlying Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. §§1334, 157(a), and Local General Order 2012–7 of the United States District Court for the Northern District of Ohio. Actions to determine dischargeability are core proceedings that this court may hear and determine. 28 U.S.C. §§157(b)(1) and (b)(2)(I).

For the following reasons, Plaintiff's Motion for Summary Judgment will be denied.

## FACTUAL BACKGROUND

In early March 2022, Plaintiff entered into a business agreement (the "Agreement") with the Defendant-Debtor. [Doc. #1, ¶9]. Pursuant to the Agreement, Plaintiff was to provide Defendant-Debtor with inventory consisting of factory-sealed boxes of sports cards and other memorabilia, including jerseys and football helmets. [*Id.*] The products, valued at approximately $225,000, were intended for resale through Defendant-Debtor's card "breaking" business. [*Id.*, ¶¶10 & 15]. This business model appears to involve selling individual slots to collectors, who then receive specific cards from opened boxes during live online events. [*Id.*, ¶11].

Plaintiff averred that:

> 12. In order to induce Plaintiff to transfer additional inventory to Leibold, Leibold repeatedly represented to Plaintiff that the 'breaking' enterprise was profitable, that business was good, and that Leibold was making money and generating revenue from the sale of Plaintiff's products.
>
> 13. From March 2022 until June of 2022, Leibold regularly sent Plaintiff emails which included an inventory list of products which Plaintiff made available to Defendant and the dollar amount of purported sales made by Defendant of those products to third parties.

2

> 14. In reliance of these representation made by Leibold, Plaintiff made additional inventory available to Leibold.
>
> 15. Between approximately March 21, 2022 and June 15, 2022, Plaintiff made available to Defendant over 600 factory sealed boxes of sports cards – including over 150,000 individual sports cards – and other sports memorabilia with a total retail value of $225,000.00.

[*Id.*, ¶¶12-15].

In June 2022, Plaintiff discovered that four checks provided by Defendant-Debtor had been dishonored for insufficient funds. [*Id.*, ¶16]. On June 26, 2022, Defendant-Debtor issued another check for $13,151, which was also returned for insufficient funds. [*Id.*, ¶17]. Subsequently, on July 6, 2022, Defendant-Debtor met with Brian Lonsway, Plaintiff's principal and managing member, at Lonsway's residence. [*Id.*, ¶18]. Plaintiff's Complaint further avers that:

> 19. During the July 6, 2022 meeting, Leibold confessed that Leibold had systemically misrepresented the health of the card 'breaking' enterprise and revealed that Leibold had falsified the alleged 'sales data' contained in the multiple emails sent by Leibold to Plaintiff.
>
> 20. In actuality, Leibold had failed to make money from the sale of the Plaintiff's products and had used what limited funds Leibold received from the sale of the products to pay for Leibold's living and other personal expenses.
>
> 21. Leibold further revealed to Plaintiff that Leibold had opened all of the sealed product which had been provided to Leibold by Plaintiff, including over $100,000 of product which was opened outside of the live 'break' events.

[*Id.*, ¶¶19-21].

On August 3, 2022, Plaintiff asserts that Defendant-Debtor provided it a falsified bank deposit slip showing a $185,000 deposit into his account. [*Id.*, ¶24]. According to Plaintiff's Complaint, Defendant-Debtor represented that the funds were from a loan or third-party investment intended to reimburse Plaintiff, leading Plaintiff to refrain from taking immediate legal

23-03022-jpg    Doc 50    FILED 03/31/25    ENTERED 04/01/25 09:00:47    Page 3 of 15

action. [*Id.*, ¶¶24-26].

Despite these assurances, Defendant-Debtor failed to make any payments to Plaintiff or return the provided inventory. [*Id.*, ¶27]. Plaintiff's claims against Defendant-Debtor were subsequently stayed and remain pending in the Huron County Court of Common Pleas under Case No. CVH20220727.

On January 18, 2023, Defendant-Debtor filed a Chapter 7 bankruptcy petition. [Case #23-30070, Doc. #1]. Defendant listed Plaintiff as a creditor on Schedule F of his petition with a debt amount of $1,500,000, marking it as disputed. [*See*, *id.*; Doc. #1, ¶8; Doc. #44, p. 2]. On January 23, 2023, Defendant-Debtor was indicted in Lorain County for theft and passing bad checks. [Doc. #44, p. 2]. He pleaded guilty to multiple felony counts on September 25, 2023, including one count of theft by deception and five counts of passing bad checks. [*Id.*, p. 3; *id.*, Ex. 2]. The Lorain County Common Pleas Court ordered Defendant-Debtor to pay restitution of $141,000 to Plaintiff as part of his sentence. [*Id.*].

On May 8, 2023, Plaintiff initiated this adversary proceeding, asserting that Defendant-Debtor's actions constituted fraudulent misrepresentation and willful and malicious injury under §§523(a)(2)(A), (a)(2)(B), and (a)(6). [Doc. #1]. Plaintiff seeks to have the debt declared non-dischargeable, citing Defendant-Debtor's fraudulent conduct, misuse of inventory, and false representations.[1]

Defendant-Debtor denied all of Plaintiff's allegations in his Answer [Doc. #5]. In his response to Plaintiff's Motion for Summary Judgment, Defendant-Debtor argued that there are genuine issues of material fact requiring resolution through trial. [Doc. #49].

Plaintff's Motion for Summary Judgment does not provide any documentation regarding: 1) the terms of the Agreement; 2) any copies of the dishonored checks; 3) any of the alleged communications that induced Plaintiff to provide additional inventory; or 4) documents showing the specific delivery dates of the product to be sold and the values of the delivered product.

## SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding

---

[1] Plaintiff's Motion for Summary Judgment, however, only cites §§523(a)(2)(A) and (a)(6) as the basis for non-dischargeablity [Doc. #44].

by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Wilson v. Gregory*, 3 F.4th 844, 855 (6th Cir. 2021). In reviewing a motion for summary judgment all inferences must be viewed in the light most favorable to the non-moving party. *See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment always bears the initial burden of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

## LAW AND ANALYSIS

A. *Exceptions to Discharge under §§523(a)(2)(A), 523(a)(2)(B), and (a)(6)*

Plaintiff seeks a determination that the debt owed him by Defendant-Debtor in connection with the "inventory of boxed, factory-sealed sports cards, as well as other sports memorabilia, including jerseys and football helmets" agreement and resulting criminal conviction for theft and passing bad checks is non-dischargeable under 11 U.S.C. §§523(a)(2)(A), 523(a)(2)(B), and 523(a)(6). Exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th

5

Cir. 1998); *In re Livingston,* 372 F. App'x 613, 618 (6th Cir. 2010). Additionally, "[t]he objecting creditor bears the burden of proof by a preponderance of the evidence to establish the debt is of the type excepted from discharge." *Brann v. Oxford* (*In re Oxford*), 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010)(citing *In re Molino*, 225 B.R. 904, 907 (6th Cir. BAP 1998)); *see also*, *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

      i. *11 U.S.C. §523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services...to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." In order to except a debt from discharge under this section, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert,* 141 F.3d at 280-81.

Under §523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Baker v. Wentland* (*In re Wentland*), 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009)(quoting *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)). "False pretenses are distinguishable from false representations in that 'a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression while a false representation involves an express representation.'" *Coughlin Chevrolet, Inc. v. Thompson* (*In re Thompson*), 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011)(quoting *Goldberg Securities, Inc. v. Scarlata* (*In re Scarlata*), 127 B.R. 1004, 1009 (N.D. Ill. 1991)); *see also*, *Wentland*, 410 B.R. at 594.

In addition to "false representation" and "false pretenses," the Supreme Court has held that § 523(a)(2)(A) also provides a cause of action for "actual fraud," or fraud that "[does] not require a misrepresentation from a debtor to a creditor." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S.

6

355, 136 S.Ct. 1581, 1587, 194 L.Ed.2d 655 (2016); *see also, Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001). "Actual fraud" includes fraudulent transfers and "fraudulent conduct" that deals in "acts of concealment and hindrance." *Husky Int'l Elecs., Inc.*, 136 S.Ct. at 1587.

A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained through review of the totality of the circumstances. *Rembert,* 141 F.3d at 281-82; *see also*, *Oxford*, 440 B.R. at 777. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," given that direct, express proof of intent is rarely available. *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (6th Cir. BAP 1999) (quoting *Hunter v. Sowers* (*In re Sowers*), 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998)); *Oxford*, 440 B.R. at 777.

Here, Plaintiff alleges that the Defendant-Debtor engaged in deceptive and fraudulent conduct in violation of §523(a)(2)(A) with respect to their Agreement by: (1) representing that the products - consisting of factory-sealed sports cards, jerseys, and football helmets - would be sold and the proceeds used to repay the Plaintiff; (2) opening the product, thereby spoiling it and significantly diminishing its commercial value; and (3) using the income from the product's sale for personal expenses, despite assuring the Plaintiff that the sales would adhere to their agreed terms. [Doc. #1, pp. 7-8]. Plaintiff further alleges that Defendant-Debtor knowingly provided false and misleading listings of product sales with the intent to deceive Plaintiff and induce reliance. [*Id.*]. Plaintiff avers that it relied on these representations to their detriment, resulting in significant and ongoing financial losses. [*Id.*].

Neither party submitted affidavits nor the written contract (if one exists) establishing the terms of the Agreement. A certified copy of the Journal Entry and Judgment entry of Conviction and Sentence from the criminal state court order for restitution was submitted as an exhibit to Plaintiff's Motion. However, even if the court were to accept the criminal Judgment entry as *res judicata*[2] as to the issues it addresses, there would still remain genuine issues of triable fact as to: 1) whether Defendant-Debtor made material misrepresentations and/or acted fraudulently at the

---

2/ The difficult legal issues related to the use of Ohio criminal convictions in civil proceedings will be discussed in connection with Section 523(a)(6), below.

23-03022-jpg    Doc 50    FILED 03/31/25    ENTERED 04/01/25 09:00:47    Page 7 of 15

outset of the Agreement; and, 2) whether Defendant-Debtor entered into the Agreement with an intent to defraud Plaintiff. *See*, *Husky Int'l Elecs., Inc.*, 136 S.Ct. at 1591 ("Section 523(a)(2)(A) applies only when the fraudulent conduct occurs at the inception of the debt . . . .").

The Complaint states that deliveries of the products was made from March 21, 2022 and June 15, 2022. [Doc. #1, ¶15]. But no documentation of the dates of delivery, or the value of the products delivered was included with the Motion for Summary Judgment. There is an allegation that dishonored checks were delivered to Plaintiff by Defendant at some point in June of 2022, but there is no documentation as to when in June, 2022 the check(s) were tendered. Thus, it is unclear what product was delivered in reliance on the bad checks (if any) and what the value of that product was. To the extent that reliance on Defendant's fraud is premised on the delivery of falsified reports, none of those reports are in the record. The court cannot determine to what extent the product obtained by Defendant-Debtor was based on Plaintiff's reliance on his misrepresentations.

Given the lack of a written contract between the parties from which definite terms of the Agreement can be adduced, and the absence of documentation or other evidence regarding Defendant-Debtor's representations, Plaintiff has not presented the evidence needed for this court to grant judgment as a matter of law. In other words, the court finds that the relatively sparse evidentiary record at hand raises issues of disputed fact sufficient to render summary judgment inappropriate, largely because the uncertain terms of the Agreement underpinning the Agreement allow for competing inferences of relatively equal weight to be drawn against both parties. *See*, *Rivera*, 338 B.R. at 327; *Desmond v. Varasso* (*In re Varasso*), 37 F.3d 760, 764 (1st Cir. 1994)(". . . when facts . . . are capable of supporting conflicting yet plausible inferences . . . then the choice between those inferences is not for the court on summary judgment.").

Cases in which courts have analyzed the propriety of summary judgment in the context of a contract and/or agreement further weigh against this court's grant of Summary Judgment against Defendant-Debtor. In *Hunter*, for example, this court noted that "proof of a breach of contract does not support a Section 523(a)(2)(A) finding." *In re Hunter*, 535 B.R. 203, 218 (Bankr. N.D. Ohio 2015). The fact that the Defendant breached the Agreement (which is not presently in

23-03022-jpg    Doc 50    FILED 03/31/25    ENTERED 04/01/25 09:00:47    Page 8 of 15

evidence) is not sufficient (in and of itself) for non-dischargeability.  The issue is Defendant-Debtor's intent at the time of the transfer(s) of property to him.  While fraudulent intent can be inferred from the actions of a defendant: 1) typically that inference is not appropriate, absent very substantial evidence; and 2) in contrast, there is almost no documentary evidence in the Summary Judgment record before the court.

In *PNC Bank, N.A. v. Laskey* (*In re Laskey*), 441 B.R. 853 (Bankr. N.D. Ohio 2010), the court denied both parties' cross-motions for summary judgment on plaintiff's §523(a)(2)(A) claim. Much like in *Hunter*, the *Laskey* court compared the defendant-debtor's conduct with the terms of a written agreement that outlined the scope of his use of a business credit line. 441 B.R. at 856-57. Before concluding that inferences could be drawn against both parties in a manner that precluded summary judgment, the *Laskey* court noted that "issues involving an individual's state of mind" usually require a trial because "[d]eterminations concerning a debtor's state of mind require a subjective assessment of the debtor's intent which often can only be made by the trier-of-fact after it has had the opportunity to assess the credibility and the demeanor of witnesses who testify…." 441 B.R. at 856.

What the Bankruptcy Code makes non-dischargeable is a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent *obtained by*" the various forms of fraud. *See*, §523(a)(2)(A) (emphasis added); *and see generally*, *In re Childers*, 651 B.R. 699 (Bankr. N.D. Ohio 2023).   The timeline reflects that property was delivered first, and the bad checks and breaches of the Agreement happened thereafter.  Plaintiff's Complaint (which is not Summary Judgment evidence) does not make it clear that any property was delivered in reliance on the tendered "bad checks".  While it may be that Defendant had an intent to defraud from the inception of the Agreement, there is no evidence of that intent that would support the granting of Summary Judgment.  The paucity of facts in evidence allow for a number of possible findings, other than that the Agreement was fraudulent at its inception.  For example: 1) the business model was not viable; 2) the "breaking" idea had become outmoded in the fast changing world of the internet – or had become saturated with similar concepts; 3) Defendant was not an interesting

9

enough streamer to gain the audience and customers necessary for viability; or 4) the type of card packs being "broken" were not as popular as other card types.   Any of these business errors would not render non-dischargeable the underlying debt for the property Debtor obtained from Plaintiff.

To the extent that the allegations are that, at some point after the parties entered into the Agreement, Defendant-Debtor's conduct became fraudulent – there is no record evidence for the court to find what product or monies Defendant obtained after that transition occurred.

Further, it has been held that the frustration of collection efforts – even by an allegedly fraudulent scheme – does not transform a debt for breach of contract into a non-dischargeable debt. *See*, *Walker v. Vanwinkle (In re Vanwinkle)*, 562 B.R. 671, 677-78 (Bankr. E.D. Ky. 2016); *Norton v. Wilson (In re Wilson)*, 2017 WL 1628878 at *8, 2017 Bankr. LEXIS 1176 at *26 (Bankr. N.D. Ohio May 1, 2017)(citing *Vanwinkle*).

Thus, there is a genuine issue of material fact as to what Debtor-Defendant's intent was at the time property was "obtained".

The court finds that *Hunter* and *Laskey* both support the denial of summary judgment to Plaintiff.  In this case, the court is faced with an even sparser record than *Hunter* and *Laskey*, containing conflicting assertions, references to facts surrounding the Agreement which has been disputed, and a state court restitution order that made minimal factual findings relevant to a non-dischargeability determination. [Doc. 44, Ex. 2].   Additionally, the available facts allow for inferences to be drawn both for and against Defendant-Debtor's allegedly fraudulent intent with regards to the Agreement such that the court finds "a subjective assessment" based upon trial testimony to be appropriate. *See*, *Laskey*, 441 B.R. at 856; *Varasso*, 37 F.3d at 764.

Accordingly, the court denies Plaintiff's Motion for Summary Judgment as to the §523(a)(2)(A) claim.

      ii. *11 U.S.C. §523(a)(2)(B)*

It appears Plaintiff did not reallege a non-dischargeability argument under §523(a)(2)(B) in their Motion for Summary Judgment.   Thus, it does not appear to be in issue at this time, on Plaintiff's Motion for Summary Judgment.

The court also notes that "bad checks" have been held to not be a statement of any kind, and thus cannot be construed as a statement regarding the Debtor-Defendant's financial condition. *See e.g.*, *Williams v. United States*, 458 U.S. 279, 284 (1982); *Stewart v. E. Tenn. Title Ins. Agency, Inc. (In re Union Sec. Mortg. Co.)*, 25 F.3d 338, 341 (6th Cir. 1994)(reversing district court's holding that delivery of dishonored check was in and of itself fraudulent); *Phoenix Fin. Solutions, Inc. v. Williams (In re Williams)*, 2015 WL 430242, at *3, 2015 Bankr. LEXIS 294 at **7-8 (Bankr. N.D. Ohio Jan. 30, 2015); *Spa Cover, Inc. v. Hatley (In re Hatley)*, 2009 WL 5205385, at **3-4, 2009 Bankr. LEXIS 4177 at **6-7 (Bankr. E.D. Tenn. Dec. 23, 2009); *McAdams, Inc. v. Childers (In re Childers)*, 311 B.R. 232, 238 (Bankr. E.D. Wis. 2004); *Busch, Inc. v. Grilliot (In re Grilliot)*, 293 B.R. 725, 731 (Bankr. N.D. Ohio 2002).[3]

Accordingly, to the extent it is even an issue here, the court denies Plaintiff's Motion for Summary Judgment as to the §523(a)(2)(B) claim.

      iii. *11 U.S.C. §523(a)(6)*

Section 523(a)(6) provides that a debt arising out of a "willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from the discharge injunction. *See*, *Dardinger v. Dardinger* (*In re Dardinger*), 566 B.R. 481, 493 (Bankr. S.D. Ohio 2017). Given that the word "willful" directly modifies the word "injury," "nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Schafer v. Rapp* (*In re Rapp*), 375 B.R. 421, 435-36 (Bankr. S.D. Ohio 2007)(quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 976-77, 140 L.Ed.2d 90 (1988)). A "willful" injury is one where the debtor "either desires to cause the consequences of his actions or believes 'that the consequences are substantially certain to result' from his actions." *Id.* at 436 (quoting *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999)(internal quotations omitted)); *see also*, *Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 307 (6th Cir. BAP 2004). In other words, the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz*, 190 F.3d at 465 n.10; *Trantham*, 304 B.R. at 307.

---

3/ Moreover, the Firelands Federal Credit Union deposit slip is not a part of the evidence and record.

23-03022-jpg    Doc 50    FILED 03/31/25    ENTERED 04/01/25 09:00:47    Page 11 of 15

Not only must the injury be "willful," it must also be "malicious" in order satisfy §523(a)(6). A "malicious" injury is one where the debtor has acted "in conscious disregard of [his] duties or without just cause or excuse." *Dardinger*, 566 B.R. at 493 (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)); *see also*, *Gonzalez v. Moffitt* (*In re Moffitt*), 252 B.R. 916, 923 (6th Cir. 2000). Conscious disregard of duty or a lack of justification is sufficient; the debtor does not need to "act with ill will, spite, or animosity towards the injured party" to have acted maliciously within the meaning of §523(a)(6). *Rapp*, 375 B.R. at 436 (citing *Grange Mut. Cas. Co. v. Chapman* (*In re Chapman*), 228 B.R. 899, 909 (Bankr. N.D. Ohio 1998)).

The use of criminal convictions in civil actions – particularly bankruptcy dischargeability proceedings – is a difficult area. There are several cases that hold that a criminal conviction cannot be given preclusive effect in a non-dischargeability action under Section 523(a)(6). *See*, *In re Chapman*, 228 B.R. 899, 905 (Bankr. N.D. Ohio 1998); *The Bros. Grimm Grass Co. v. Weidaw (In re Weidaw)*, 2017 WL 6754136 at *3, 2017 Bankr. LEXIS 3406 at **9-10 (Bankr. N.D. Ohio Dec. 28, 2017). To the extent the logic is that there is not an identity of parties[4] – as is typically required for the application of *res judicata* under Ohio law – the same logic would apply to use of the criminal conviction under Section 523(a)(2).

The record's lack of evidence regarding Defendant-Debtor's intent at various points in time counsels against the court's grant of summary judgment under §523(a)(6). *See*, *Radabaugh*, 307 F.3d at 467. While Plaintiff claims that Defendant-Debtor's actions were intentional and malicious, the only evidence offered in support consists solely of Defendant-Debtor's restitution order, which the court finds insufficient on this issue. [Doc. #44, Ex. 2]. Instead, it appears that "a subjective assessment" of Defendant-Debtor's credibility via trial is warranted here, particularly given that the case law supports Defendant-Debtor's assertion that: "Intending an act is not synonymous with intending the injury, as is required under § 523(a)(6)." [Doc. #49, p. 11].

Moreover, without evidence detailing precisely what occurred, and when, during the course of the parties' Agreement, the court is unable to determine whether, as a matter of law, Defendant-

---

4/ The parties in the criminal proceeding were the Defendant-Debtor and the state or local authority conducting the criminal prosecution. Not the Plaintiff. *Phillips v. Rayburn*, 113 Ohio App.3d 374, 381–82, 680 N.E.2d 1279, 1284 (1996)("We note that appellees were not parties to the criminal trial. More important, they would not have been bound by the prior judgment.").

23-03022-jpg    Doc 50    FILED 03/31/25    ENTERED 04/01/25 09:00:47    Page 12 of 15

Debtor's actions and representations to Plaintiff regarding the card breaking events constitutes an "intentional injury" under *Geiger*. The parties appear to agree that, at least initially, Plaintiff was going to be allowed to hold and open the sealed sports card boxes under the Agreement. [Doc. #1, p. 4; Doc. #49, p. 11]. The timing of the change in Defendant-Debtor's position, and its basis, are not reflected in any documentary evidence, or sworn statement, before the court. [Doc. #44, p. 3]. Arguably, the "breaking" of the card packs could involve the intentional tort of conversion, but there is not enough information to so find on Summary Judgment. Further, there is no evidence as to the value associated with the cards that were broken in a manner inconsistent with the Agreement. The court's ability to draw competing inferences against both parties relative to Defendant-Debtor's sports card breaking events weighs against the granting of summary judgment on Plaintiff's §523(a)(6) claim. *See*, *Rivera*, 338 B.R. at 327; *Varasso*, 37 F.3d at 764.

Accordingly, the court will deny Plaintiff's Motion for Summary Judgment as to the §523(a)(6) claim.

  iv. *Complications Arising From The Criminal Restitution Order.*

Defendant-Debtor concedes in its response that the post-petition state court order for criminal restitution is non-dischargeable under 11 U.S.C. Section 523(a)(7). *See*, [Doc. #49, p. 6] ("Defendant does not dispute the fact that restitution obligations imposed as conditions of probation in state criminal proceedings are not dischargeable under Section 523(a)(7) of the Bankruptcy Code. *Kelly v. Robinson*, 479 U.S. 36 (1986)."). While the law regarding the non-dischargeability of criminal restitution obligations in the Sixth Circuit is not without nuance, this appears to be the majority view. *See e.g*, *Dover v. U.S.*, 367 Fed. Appx. 651, 654 (6th Cir. March 4, 2010); *Auto Owners Ins. Co. v. Smith (In re Smith)*, 547 B.R. 774, 778-779 (E.D. Mich. 2016); *In re Browning*, 449 B.R. 902, 905 (Bankr. W.D. Ky. 2010); *In re Humphrey*, 362 B.R. 860, 863-864 & n.2 (Bankr. N.D. Ohio 2006).

As yet, Plaintiff has not asked this court to determine the dischargeability of the restitution obligation. Unlike the strict deadlines for actions under 11 U.S.C. Sections 523(a)(2), (a)(4) and (a)(6), there is no statutory time limit for bringing an action under Section 523(a)(7). *See*, §523(c);

13

Federal Rule of Bankruptcy Procedure 4007(b) ("A complaint other than under §523(c) may be filed at any time."); *In re Branch*, 525 B.R. 388, 394 (Bankr. E.D. Mich. 2015)(citing *Maxwell*); *In re Riley*, 202 B.R. 169, 177 (Bankr. M.D. Fla. 1996)(explaining that there is no time limit for filing a complaint pursuant to § 523(a)(7)); *In re Maxwell*, 229 B.R. 400, 401 (Bankr. W.D. Ky. 1998)(same).

The issue that concerns the court is that Ohio law provides that for restitution associated with felony convictions: "All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or the victims estate against the offender." O.R.C. §2929.18(A)(1).[5] With little in the way of evidence regarding economic harm, it is not clear that Plaintiff suffered non-dischargeable damages in excess of $141,000 – the amount of the criminal restitution obligation.

For example, while the Complaint asserts that the "retail value" of the product delivered was $225,000 [Doc. #1, p. 5, ¶15], reference is made to $185,000 that Plaintiff appears to assert Defendant-Debtor fraudulently claimed was there to be paid for the inventory. If the court were to find that the only non-dischargeable debt was for the packs that were "broken" in violation of the Agreement, the amount of damages could be below the $141,000 restitution obligation. Thus, on Summary Judgment, viewing the facts in the light most favorable to the non-moving party, there is insufficient proof to demonstrate that the non-dischargeable debt exceeds $141,000.

Further, while in many situations the amount of the non-dischargeable debt can be liquidated in state court without issue, this is not a situation where the entire amount of damages suffered by Plaintiff would automatically be non-dischargeable. Of course, there is the possibility that Plaintiff can prove, at trial, fraud on Defendant's part from the inception of the Agreement. But, as discussed above, the separation of breach of contract damages from fraud and willful and malicious injury damages – and what money, property or services were "obtained by" fraud versus fraudulent conduct in the course of attempts to collect – present issues not susceptible to resolution on Summary Judgment. If the court finds only certain actions or debts to be non-dischargeable, it may be difficult – even with a trial on these issues – to adequately describe what is going to be

---

5/ Misdemeanor restitution is treated the same way in a separate statute. O.R.C. Section 2929.28(A)(1).

the basis for non-dischargeable damages in state court, and what portion of Plaintiff's damages have been discharged (if any).

While bankruptcy courts can enter a judgment for a non-dischargeable amount[6] – not just determine dischargeability – that does not appear to be the requested relief at this time.

## CONCLUSION

Taken as a whole, the record in this case, including the parties' motions and exhibits, do not provide the court with a sufficient basis to grant Plaintiff judgment as a matter of law. Thus, the court finds that summary judgment is inappropriate based upon the existence of genuine issues of material fact as to whether, and in what amount, Defendant-Debtor's obligations to Plaintiff are non-dischargeable.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. #44] is DENIED.

**IT IS FURTHER ORDERED** that this matter will be set for further pretrial hearing to schedule a trial date and related deadlines.

**IT IS SO ORDERED.**

---

6/ *See, Hart v. S. Heritage Bank* (*In re Hart*), 564 F. App'x 773, 775-76 (6th Cir. 2014); *Waldman v. Stone*, 698 F.3d 910, 919-20 (6th Cir. 2012); *Longo v. McLaren* (*In re McLaren*), 3 F.3d 958, 965-66 (6th Cir. 1993).

15